******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZBIGNIEW S. ROZBICKI *v.* J. MICHAEL
SCONYERS ET AL.
(AC 41654)

Bright, Moll and Devlin, Js.

*Syllabus*

The plaintiff sought to recover damages, including treble damages pursuant
to statute (§ 52-568), for vexatious litigation, alleging that the defendants
had filed special defenses and brought a counterclaim against him with-
out probable cause and with malicious intent. In a prior civil action,
the defendants L and his building company, L Co., had retained the
plaintiff to defend them in that action. During the course of his represen-
tation by the plaintiff, L contacted his insurance company to inquire
about providing a defense for L and L Co. in the civil action pursuant
to their liability insurance policy. The insurance company then engaged
a law firm on L and L Co.'s behalf to defend them. The plaintiff later
commenced an action against L and L Co. seeking to collect outstanding
legal fees incurred for his services in the prior civil action. L and L Co.
retained the services of the defendants S, an attorney, and the law firm
in which he was a partner, A Co., to defend them in the collection action
and, on the advice of S and A Co., L and L Co. filed an answer, two special
defenses and a counterclaim sounding in legal malpractice against the
plaintiff, alleging, inter alia, that the plaintiff had neglected to inquire
of L's insurance company whether defense coverage was available for
the prior civil action and failed to inform L of the insurance carrier's
obligation to defend. The plaintiff and L and L Co. reached a settlement
in the collection action, and the counterclaim was withdrawn. The trial
court thereafter granted the separate motions for summary judgment
filed by S and A Co. and L and L Co. in the vexatious litigation action.
On appeal, the plaintiff alleged that the trial court improperly rendered
summary judgment on the grounds that the defendants had probable
cause to assert special defenses and file a counterclaim against the
plaintiff in the collection action and L and L Co. relied in good faith on
the advice of S and A Co. in asserting the special defenses and filing
the counterclaim. *Held*:

1. The trial court improperly granted the motion for summary judgment
   filed by L and L Co.: a genuine issue of material fact existed as to
   whether L and L Co. had probable cause to assert the special defenses
   and to file the counterclaim in the collection action; although L and L
   Co. submitted a number of exhibits indicating that L was not aware, at
   the time he hired the plaintiff in the prior civil action, that insurance
   coverage entitling him to a defense was available to him, the plaintiff
   submitted several exhibits indicating that L was aware at the time he
   hired the plaintiff that insurance coverage was available to him but that
   he did not wish to submit a claim for such coverage because, inter alia,
   he did not want his insurance premiums to increase; moreover, a genuine
   issue of material fact existed as to whether L and L Co. relied in good
   faith on the advice of S and A Co. in asserting the special defenses and
   filing the counterclaim as a factual dispute existed as to whether L
   conveyed to S all material facts within his knowledge, as the evidence
   demonstrated that L conveyed to S that he did not know of the availability
   of insurance defense coverage at the time he hired the plaintiff to defend
   him in the prior civil action, but there existed a genuine issue of material
   fact as to whether L knew of the availability of insurance coverage and,
   thus, whether the advice of S and A Co. was given after a full and fair
   statement of all facts within L's knowledge.
2. The trial court did not err in granting the motion for summary judgment
   filed by S and A Co.: the plaintiff's claim that S failed to perform an
   adequate investigation before asserting the special defenses and filing
   the counterclaim was unavailing, as S relied on statements and docu-
   ments provided to him by his clients, consultation with other attorneys,
   his own experience as a practicing attorney in Connecticut for thirty-
   six years and legal research, and this information provided S a reasonable
   basis on which to assert the special defenses and to file the counterclaim;

moreover, the plaintiff's claim that S lacked probable cause because he was not an experienced legal malpractice litigator was unavailing, as S acted as a reasonable attorney familiar with Connecticut law in believing that he had probable cause.

Argued February 4—officially released July 7, 2020

*Procedural History*

Action to recover damages for vexatious litigation, and for other relief, brought to the Superior Court in the judicial district of Litchfield, where the court, *Hon. John W. Pickard*, judge trial referee, granted the motions for summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Zbigniew S. Rozbicki*, self-represented, the appellant (plaintiff).

*Cristin E. Sheehan*, with whom, on the brief, was *Robert W. Cassot*, for the appellees (named defendant et al.).

*Patrick J. Markey*, for the appellees (defendant Frederick J. Laser et al.).

*Opinion*

MOLL, J. The plaintiff, Zbigniew S. Rozbicki, appeals from the summary judgment rendered by the trial court in favor of the defendants, Frederick J. Laser (Laser), Laser Building Company, J. Michael Sconyers, and Ackerly Brown, LLP, on his one count complaint sounding in vexatious litigation. On appeal, the plaintiff claims that the court improperly rendered summary judgment in favor of the defendants on the grounds that (1) the defendants had probable cause to assert special defenses and to file a counterclaim in a prior action commenced by the plaintiff against Laser and Laser Building Company (Laser defendants),[1] and (2) the Laser defendants relied in good faith on the advice of J. Michael Sconyers and Ackerly Brown, LLP (Sconyers defendants),[2] their counsel in the prior action, in asserting the special defenses and filing the counterclaim. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In June, 2012, Laser retained the plaintiff, who, at the time, was an attorney with an active license to practice law in Connecticut,[3] to defend the Laser defendants in a civil action captioned *Frey* v. *Noorani*, Superior Court, judicial district of Litchfield, Docket No. CV-10-6003549-S (*Frey* action).[4] In March, 2013, while represented by the plaintiff, Laser contacted NGM Insurance Company (NGM) to demand that it provide the Laser defendants with a defense in the *Frey* action pursuant to their liability insurance policy. Soon thereafter, NGM engaged the law firm Hassett and Donnelly, P.C., to appear on behalf of the Laser defendants in the *Frey* action. On March 15, 2013, Attorney Peter G. Barrett filed an appearance on behalf of the Laser defendants, in lieu of the plaintiff, in the *Frey* action.[5] Following his appearance in the *Frey* action, Attorney Barrett negotiated a settlement that resolved the action as to the Laser defendants at no additional cost to them.

In September, 2013, the plaintiff commenced an action against the Laser defendants seeking to collect $11,782.50 in outstanding legal fees incurred for his services in the *Frey* action. See *Rozbicki* v. *Laser*, Superior Court, judicial district of Litchfield, Docket No. CV-13-6009417-S (collection action).[6] Laser hired the Sconyers defendants to defend the Laser defendants in the collection action.

In the collection action, the Laser defendants, acting through the Sconyers defendants as their counsel, filed an answer, two special defenses, and a one count counterclaim sounding in legal malpractice. The first special defense alleged that "[t]he plaintiff's fees are extreme, excessive, and unreasonable." The second special defense alleged that "[t]he sums already paid to the

plaintiff by the [Laser defendants] far exceed the value of the services performed by the plaintiff."

The counterclaim alleged in relevant part as follows: "[The plaintiff], in violation of his duty [as the Laser defendants' counsel in the *Frey* action], neglected to inquire of Laser's insurance company whether coverage was available and whether it would defend the lawsuit under a reservation of rights. . . . [The plaintiff] knew or should have known that Laser's insurance company would defend the action under a reservation of rights but failed to inform Laser of that fact and in fact counseled Laser not to involve his insurance company in the proceedings. . . . Laser was informed of the fact that his insurance company had a duty to defend him under a reservation of rights by opposing counsel at his deposition [during the *Frey* action]. . . . Once informed of this fact, Laser contacted his insurance company, which then filed an appearance on his behalf and was able to promptly settle the matter at no cost to Laser. . . . The legal advice given by [the plaintiff] and the course of action undertaken by [the plaintiff] in representing [the Laser defendants] was inappropriate, time consuming, costly, and unnecessary. . . . The fees charged by [the plaintiff] were excessive and unreasonable. . . . [The plaintiff's] negligence and failure to properly handle the matter for which his legal services were retained constitute legal malpractice. . . . Due to [the plaintiff's] failure to inform Laser of his insurance carrier's obligation to defend, [the plaintiff's] failure to contact Laser's insurance company to inquire about the policy and the obligation to defend, and [the plaintiff's] own incompetence in litigating the case, Laser lost $7500 which he paid to [the plaintiff] for unnecessary and unreasonable legal fees." Ultimately, the parties reached a settlement in the collection action, and the counterclaim was withdrawn on May 21, 2014.

On July 6, 2015, the plaintiff commenced the present action against the defendants. In his one count complaint sounding in vexatious litigation,[7] the plaintiff alleged in relevant part that the defendants asserted the special defenses and filed the counterclaim in the collection action without probable cause and with a malicious intent to vex and trouble him. As relief, the plaintiff sought compensatory damages, in addition to double and treble damages pursuant to General Statutes § 52-568.[8] The Laser defendants and the Sconyers defendants, respectively, filed separate answers to the complaint denying the material allegations set forth therein. The Laser defendants also filed several special defenses, in support of which they alleged that they had asserted the special defenses and filed the counterclaim in the collection action with probable cause, without malice, and in reliance on the advice of counsel.

On July 3, 2017, the Sconyers defendants filed a motion for summary judgment accompanied by a sup-

porting memorandum of law and exhibits. On July 5, 2017, the Laser defendants filed a separate motion for summary judgment accompanied by a supporting memorandum of law and exhibits. The plaintiff filed separate memoranda of law, with exhibits appended thereto, in opposition to the defendants' respective motions for summary judgment. On March 21, 2018, following argument held on November 27, 2017, the trial court, *Hon. John W. Pickard*, judge trial referee, issued a memorandum of decision granting the defendants' respective motions for summary judgment. On April 10, 2018, the plaintiff filed a motion to reargue, which the court denied on April 19, 2018. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before addressing the plaintiff's claims on appeal, we set forth the relevant standard of review and legal principles governing our analysis. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him [or her] to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Rutter* v. *Janis*, 334 Conn. 722, 729, 224 A.3d 525 (2020).

"In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Internal quotation marks omitted.) *Rockwell* v. *Rockwell*, 196 Conn. App. 763, 769–70,     A.3d     (2020).

"[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person

of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man [or woman] in the belief that he [or she] has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted. . . . [T]he existence of probable cause is an absolute protection against an action for [vexatious litigation], and what facts, and whether particular facts, constitute probable cause is always a question of law. . . .

"[In *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 912 A.2d 1019 (2007)] [o]ur Supreme Court . . . had the opportunity to consider whether a higher legal standard of probable cause should be applied to attorneys and law firms sued for vexatious litigation. . . . After considering the statute and the competing policy interests, the court concluded that a higher standard should not apply. . . . Instead, in assessing probable cause, the court phrased the critical question as whether on the basis of the facts known by the law firm, a reasonable attorney familiar with Connecticut law would believe he or she had probable cause to bring the lawsuit. . . . As is implied by its phrasing, the standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated the lawsuit." (Citations omitted; internal quotation marks omitted.) *Byrne* v. *Burke*, 112 Conn. App. 262, 274–75, 962 A.2d 825, cert. denied, 290 Conn. 923, 966 A.2d 235 (2009).

"[P]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our [common-law] system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 103–104.

As it relates to the present action, the counterclaim filed by the defendants in the collection action sounded in legal malpractice. "Malpractice is commonly defined as the failure of one rendering professional services to

exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services . . . . Generally, a plaintiff alleging legal malpractice must prove all of the following elements: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Costello & McCormack, P.C.* v. *Manero*, 194 Conn. App. 417, 431, 221 A.3d 471 (2019).

I

We first turn to the plaintiff's claim that the trial court improperly granted the Laser defendants' motion for summary judgment. Specifically, the plaintiff contends that there were genuine issues of material fact as to whether the Laser defendants (1) had probable cause to assert the special defenses and to file the counterclaim in the collection action, and (2) relied in good faith on the advice of the Sconyers defendants in asserting the special defenses and filing the counterclaim. We agree.[9]

The following additional facts and procedural history are relevant to our resolution of this claim. In their memorandum of law in support of their motion for summary judgment, the Laser defendants claimed that they asserted the special defenses and filed the counterclaim with probable cause, without malice, and in reliance on the advice of the Sconyers defendants. As to probable cause, the Laser defendants contended that Laser asked the plaintiff during the *Frey* action for advice about duty to defend coverage in connection with the *Frey* action, but the plaintiff failed to determine whether the Laser defendants had such coverage and dissuaded Laser from demanding a defense from NGM. The Laser defendants further asserted that Sconyers advised them that the plaintiff had breached an obligation that he owed to them to determine whether they had duty to defend coverage available to them with respect to the *Frey* action and, if so, to demand a defense. As to their advice of counsel defense, the Laser defendants claimed that Laser provided to Sconyers all relevant documents and facts regarding the *Frey* action and the collection action, and that, on the basis thereof, Sconyers recommended that the Laser defendants assert the special defenses and file the counterclaim. The Laser defendants further contended that they relied in good faith on Sconyers' advice. The Laser defendants submitted several exhibits in support of their motion for summary judgment, including personal affidavits of Laser and Sconyers.

In opposing the Laser defendants' motion for summary judgment, the plaintiff argued, inter alia, that there were genuine issues of material fact regarding whether the Laser defendants (1) had probable cause to assert

the special defenses and to file the counterclaim and (2) relied in good faith on the advice of the Sconyers defendants. Specifically, the plaintiff argued that there was evidence in the record demonstrating that, at the time that Laser retained the plaintiff to represent the Laser defendants in the *Frey* action, Laser knew that there was duty to defend coverage available to the Laser defendants in the *Frey* action, but, for financial reasons, he chose to retain the plaintiff as counsel rather than demand a defense from NGM. The plaintiff asserted that Laser's knowledge of the Laser defendants' duty to defend coverage deprived the Laser defendants of probable cause to assert the special defenses and to file the counterclaim, which were predicated on the plaintiff's failure to advise Laser about insurance coverage. Additionally, the plaintiff argued that there was evidence in the record establishing that Laser provided Sconyers with false or incomplete information, and, therefore, the Laser defendants could not have relied in good faith on the advice of the Sconyers defendants. The plaintiff submitted several exhibits in support of his memorandum of law in opposition to the Laser defendants' motion for summary judgment, including a personal affidavit and copies of correspondence exchanged between the plaintiff and Laser.

In granting the Laser defendants' motion for summary judgment, the trial court concluded that, although not yet recognized in Connecticut, an attorney's obligation to his or her client "arguably" includes the duty to advise the client "on the most affordable course of action including an investigation of potential insurance coverage," such that the Laser defendants' belief that the plaintiff had a duty to advise Laser as to insurance coverage during the *Frey* action was reasonable. The court further concluded that, on the basis of evidence submitted by the Laser defendants indicating that Laser had told Sconyers that the plaintiff did not advise him to seek a determination regarding duty to defend coverage but rather dissuaded him from pursuing such a determination, there was no genuine issue of material fact that the defendants had probable cause to file the counterclaim sounding in legal malpractice in the collection action. The court proceeded to reject several of the plaintiff's arguments directed to the Sconyers defendants, and determined that the plaintiff's personal affidavit raised no genuine issue of material fact as to whether probable cause existed to file the counterclaim.

Having concluded that the Laser defendants had probable cause to file the counterclaim, the court concluded that they likewise had probable cause to assert the special defenses. Specifically, the court stated that if the plaintiff had advised the Laser defendants regarding insurance coverage during the *Frey* action, then NGM would have assigned counsel to defend them at the outset of the *Frey* action at no cost, and, thus, they

never would have incurred the plaintiff's legal fees.

Additionally, the court granted the Laser defendants' motion for summary judgment on the separate ground that there was no genuine issue of material fact that the Laser defendants relied in good faith on the advice of the Sconyers defendants in asserting the special defenses and filing the counterclaim—advice of counsel being an absolute defense to the plaintiff's vexatious litigation claim.

On appeal, the plaintiff does not assert that a legal malpractice claim predicated on an attorney's failure to advise his or her client regarding insurance coverage is not viable, nor does he dispute that he did not advise Laser about insurance coverage. Instead, the plaintiff maintains that he had no reason to counsel Laser about insurance matters because, as evidence in the record indicated, Laser, when he retained the plaintiff in the *Frey* action in June, 2012, knew that NGM would provide a defense to the Laser defendants in the *Frey* action, but, for financial reasons, Laser chose to retain the plaintiff rather than submit to NGM a demand for a defense.[10] In essence, the plaintiff contends that there was a genuine issue of material fact regarding whether the Laser defendants had probable cause to assert the special defenses and to file the counterclaim, both being predicated on the plaintiff's failure to advise Laser about insurance coverage. Additionally, the plaintiff argues that there was a genuine issue of material fact as to whether the Laser defendants relied in good faith on the advice of the Sconyers defendants because there was evidence in the record indicating that Laser did not provide Sconyers with all material facts within his knowledge. We address each claim in turn.

### A

We first consider the plaintiff's claim that there was a factual dispute regarding Laser's knowledge, at the time that he retained the plaintiff in the *Frey* action in June, 2012, of duty to defend coverage available to the Laser defendants, and, therefore, a genuine issue of material fact existed as to whether the Laser defendants had probable cause to assert the special defenses and to file the counterclaim in the collection action. We agree.

As a preliminary matter, we observe that the factual issue of whether Laser, in June, 2012, knew that the Laser defendants were entitled to a defense provided by NGM was material to the legal question of whether the Laser defendants had probable cause to assert the special defenses and to file the counterclaim. See *Rutter* v. *Janis*, supra, 334 Conn. 729 ("[a] material fact . . . [is] a fact which will make a difference in the result of the case" (internal quotation marks omitted)). The legal theory underlying the special defenses and the counterclaim was that the plaintiff, when retained by Laser in the *Frey* action, had a duty to determine whether the

Laser defendants had insurance coverage for the defense of the *Frey* action and, if so, to advise Laser to seek a formal determination regarding said coverage. The Laser defendants contended that, as a result of the plaintiff's breach of that duty, Laser did not discover the Laser defendants' entitlement to a defense by NGM until nearly one year following their involvement in the *Frey* action, during which time they incurred legal fees owed to the plaintiff that never would have accrued had they been provided with a defense by NGM at the outset of the *Frey* action. Implicit in the Laser defendants' claim was that Laser, when he hired the plaintiff in the *Frey* action, was unaware that NGM would have provided a defense to the Laser defendants in the *Frey* action immediately upon the submission of a proper demand. Consequently, if Laser knew at that time that the Laser defendants were entitled to such a defense, then the Laser defendants would not have had a reasonable, good faith basis on which to assert the special defenses and to file the counterclaim predicated on the plaintiff's failure to determine whether Laser had insurance coverage and to advise Laser thereabout. To summarize, if a genuine issue of material fact existed as to Laser's knowledge, at the time that he had hired the plaintiff in the *Frey* action, regarding the Laser defendants' entitlement to a defense by NGM in connection with the *Frey* action, then the Laser defendants were not entitled to summary judgment as to the issue of probable cause.

The Laser defendants submitted a number of exhibits indicating that Laser was not aware in June, 2012, when he retained the plaintiff in the *Frey* action, that insurance coverage entitling the Laser defendants to a defense in the *Frey* action was available. In his personal affidavit, Laser averred that he submitted a demand for a defense to NGM in connection with the *Frey* action only after learning from opposing counsel during his deposition in the *Frey* action, conducted on March 5, 2013, that NGM was likely obligated to provide the Laser defendants with a defense. In a letter addressed to the plaintiff dated August 20, 2013, Laser similarly represented that he was prompted to submit a demand for a defense to NGM once opposing counsel in the *Frey* action had advised him that NGM was obligated to provide the Laser defendants with a defense in the *Frey* action. Additionally, in an e-mail from Laser to the plaintiff dated October 15, 2013, Laser wrote that, during his first meeting with the plaintiff in the course of the *Frey* action, Laser told the plaintiff that Laser's wife had been informed by their insurance agency, Curtis Insurance Agency, Inc. (Curtis), that the Laser defendants were not entitled to insurance coverage with respect to the *Frey* action. Collectively, this evidence suggests that, at the time that Laser hired the plaintiff in the *Frey* action, Laser was under the impression that duty to defend coverage in connection with the *Frey*

action was not available to the Laser defendants and that he first became aware of such coverage in March, 2013.

In contrast, the plaintiff submitted several exhibits indicating that Laser was aware in June, 2012, that the Laser defendants had duty to defend coverage available to them in connection with the *Frey* action. In his personal affidavit, the plaintiff averred that Laser, when Laser retained him in the *Frey* action, told him that Curtis informed Laser that insurance coverage would be available to the Laser defendants with respect to the *Frey* matter, but Laser did not wish to submit a claim for such coverage because, inter alia, he did not want his insurance premiums to increase. Additionally, Paul Koneazny, an employee of Curtis, during his deposition in the collection matter, testified in relevant part that (1) sometime prior to the Laser defendants' involvement in the *Frey* action, Laser's wife told Curtis that there was a possibility that a legal claim would be made against the Laser defendants, (2) Curtis instructed Laser's wife to notify it promptly if any such claim was filed, (3) Curtis never advised Laser or his wife that they were not entitled to insurance coverage with respect to the *Frey* action, and (4) Curtis first learned of the *Frey* action in March, 2013. Finally, in an e-mail from Laser to another attorney involved in the *Frey* action, on which the plaintiff and Attorney Barrett were copied, dated April 1, 2013, Laser wrote in relevant part that "when [Laser] initially spoke with [the plaintiff] about the [*Frey* action] [Laser] was under the impression that due to the overreaching and frivolous nature of the lawsuit it would be thrown out with minimum cost and paperwork. [The Laser defendants] did not anticipate the case would become as complicated and expensive as it has become *thus the recent involvement of the insurance company.*" (Emphasis added.) Collectively, this evidence suggests that Laser knew, in June, 2012, that the Laser defendants were entitled to a defense in connection with the *Frey* action, but that he chose to forgo submitting a demand for a defense to NGM until the complexity and cost thereof became too great.

In light of the foregoing, we agree with the plaintiff that there existed a genuine issue of material fact regarding Laser's knowledge, at the time that he retained the plaintiff in the *Frey* action, of the Laser defendants' entitlement to insurance coverage for the defense of the *Frey* action. Accordingly, the trial court improperly granted the Laser defendants' motion for summary judgment on the ground that the Laser defendants had probable cause to assert the special defenses and to file the counterclaim in the collection action.

B

We next address the plaintiff's claim that there was a genuine issue of material fact as to whether the Laser defendants relied in good faith on the advice of the

Sconyers defendants in asserting the special defenses and filing the counterclaim in the collection action. Specifically, the plaintiff asserts that there was a factual dispute as to whether Laser conveyed to Sconyers all material facts within his knowledge. We agree.

"Advice of counsel is a complete defense to an action of . . . [malicious prosecution or] vexatious suit when it is shown that the [client] . . . instituted his [or her] civil action relying in good faith on such advice, given after a full and fair statement of all facts within his [or her] knowledge, or which he [or she] was charged with knowing. . . .

"In determining whether a [client] gave a full and fair statement of the facts within his or her knowledge to counsel, reliance on whether the omitted information would have had any impact on counsel's decision to bring the allegedly vexatious action . . . is irrelevant . . . because, as a matter of law, showing an impact on an attorney's ultimate course of action is not an element of the defense of reliance on counsel. . . . The ultimate issue is whether the [client] failed to provide his or her counsel with a fact within his or her knowledge that was material to the action. . . . In other words, a client should not be permitted to rely upon the defense of advice of counsel if the client did not disclose all of the material facts related to a potential claim, because the lawyer cannot render full and accurate legal advice regarding whether there is a good faith basis to bring the claim in the absence of knowledge of all material facts. In such instances, a client's reliance on the advice of counsel is unreasonable regardless of whether the material facts would have altered counsel's assessment of the validity of the claim." (Citations omitted; internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 227–29, 140 A.3d 979 (2016).

Our resolution of this claim is guided by our conclusion in part I A of this opinion that a genuine issue of material fact existed as to whether Laser, at the time that he hired the plaintiff in the *Frey* action, had knowledge of the availability of duty to defend coverage to the Laser defendants. The evidence submitted with regard to the Laser defendants' motion for summary judgment, including the respective personal affidavits of Laser and Sconyers, in addition to correspondence exchanged between Laser and the plaintiff that Sconyers reviewed, demonstrates that Laser conveyed to Sconyers that Laser, at the time that he retained the plaintiff in the *Frey* action, was unaware that the Laser defendants were entitled to a defense provided by NGM in the *Frey* action. If the information provided from Laser to Sconyers was inaccurate or incomplete, then Laser could not have relied in good faith on Sconyers' advice. Thus, because there existed a genuine issue of material fact as to Laser's knowledge regarding insur-

ance coverage in the defense of the *Frey* action, a genuine issue of material fact also existed as to whether Laser provided Sconyers with all of the material facts that he knew. Accordingly, the trial court improperly granted the Laser defendants' motion for summary judgment on the ground that the Laser defendants relied in good faith on the advice of the Sconyers defendants, given after a full and fair statement of all facts within Laser's knowledge, in asserting the special defenses and filing the counterclaim.[11]

## II

We next address the plaintiff's claim that the trial court improperly granted the Sconyers defendants' motion for summary judgment. For the reasons that follow, we disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. In their memorandum of law in support of their motion for summary judgment, the Sconyers defendants asserted that a reasonable attorney familiar with Connecticut law would have believed that probable cause existed in the collection action to assert the special defenses and to file the counterclaim. Underlying their claim was Sconyers' belief that, on being retained in the *Frey* action, the plaintiff had a duty to advise Laser to make a formal determination as to whether there was insurance coverage available to provide the Laser defendants with a defense in the *Frey* action.

With respect to the special defenses in particular, the Sconyers defendants contended that Sconyers investigated whether the legal fees that the plaintiff charged the Laser defendants with regard to the *Frey* action corresponded to the services that the plaintiff had provided to them, and, on the basis of his forty years of experience as a practicing attorney, Sconyers determined that the plaintiff's services did not correspond to the fees and that the fees were unwarranted and excessive. Additionally, Sconyers determined that, had the plaintiff advised Laser to seek a formal determination regarding duty to defend coverage, NGM would have defended the Laser defendants at the outset of the *Frey* action, which would have eliminated the need for the Laser defendants to hire the plaintiff and incur his legal fees. As to the counterclaim specifically, the Sconyers defendants asserted that, on the basis of the information known to Sconyers, including that the plaintiff never investigated whether Laser had liability insurance coverage, Sconyers believed that the plaintiff had committed legal malpractice. The Sconyers defendants submitted several exhibits in support of their motion for summary judgment, including a personal affidavit of Sconyers, appended to which were copies of correspondence exchanged between Laser and the plaintiff, and a personal affidavit of Laser.

In opposing the Sconyers defendants' motion for summary judgment, the plaintiff argued, inter alia, that the Sconyers defendants lacked probable cause to assert the special defenses and to file the counterclaim because Sconyers (1) lacked any experience in legal malpractice claims, (2) failed to perform an adequate investigation before pursuing the special defenses and counterclaim, and (3) lacked a good faith belief in the facts alleged in support of the special defenses and the counterclaim. In support of his memorandum of law in opposition to the Sconyers defendants' motion for summary judgment, the plaintiff attached several exhibits, including a personal affidavit and copies of additional correspondence exchanged between the plaintiff and Laser.

In granting the Sconyers defendants' motion for summary judgment, the trial court concluded that Sconyers was free to rely on the information provided to him by Laser and that a reasonable attorney familiar with Connecticut law could have believed that the plaintiff had violated a duty to the Laser defendants by failing to advise Laser as to insurance matters during the *Frey* action. The court proceeded to reject the plaintiff's arguments, determining, inter alia, that (1) Sconyers' inexperience in the area of legal malpractice was immaterial as to whether he had probable cause to pursue the legal malpractice claim, (2) Sconyers was entitled to rely on the information provided to him by Laser, and, thus, the plaintiff's argument as to Sconyers' purported lack of proper investigation was not viable, and (3) the plaintiff's affidavit failed to address the duty of care issue raised by the Sconyers defendants, and, therefore, it failed to raise a genuine issue of material fact as to whether probable cause existed to file the counterclaim.

Having concluded that the Sconyers defendants had probable cause to file the counterclaim in the collection action, the court concluded that they equally had probable cause to assert the special defenses. Specifically, the court stated that if the plaintiff had advised the Laser defendants regarding insurance coverage during the *Frey* action, then NGM would have assigned counsel immediately to them at no cost, and, thus, they never would have incurred the legal fees that they owed to the plaintiff.

On appeal, the plaintiff claims that the Sconyers defendants lacked probable cause because Sconyers failed to perform an adequate investigation prior to asserting the special defenses and filing the counterclaim. More specifically, the plaintiff contends that Sconyers, inter alia, failed to consult an expert witness, interview Laser's insurance agent, or review certain documentation predating the collection action that purportedly was available to him. Had Sconyers performed a proper investigation, the plaintiff posits, he would have

discovered that Laser did not provide him with accurate information[12] and that there was no reasonable, good faith basis on which to pursue the special defenses and the counterclaim. Additionally, the plaintiff contends that Sconyers' lack of experience in litigating legal malpractice cases further deprived him of probable cause.[13] These claims are unavailing.[14]

Turning first to the plaintiff's assertion that Sconyers failed to perform an adequate investigation before asserting the special defenses and filing the counterclaim, we are not persuaded. In his personal affidavit, Sconyers averred that he relied on the statements and documents provided to him by Laser, his consultation with another attorney, and his own experience as a practicing attorney in Connecticut for thirty-six years. In addition, during his depositions in the present case, Sconyers testified that he also interviewed Laser's wife, consulted additional attorneys, and performed legal research. The information received by Sconyers indicated that (1) Laser did not know of the Laser defendants' entitlement to insurance coverage that provided a defense in the *Frey* action when he hired the plaintiff in the *Frey* action, and (2) Laser sought advice from the plaintiff about insurance coverage but the plaintiff dissuaded Laser from pursuing insurance coverage and failed to further investigate the insurance coverage issue, which provided Sconyers with a reasonable basis on which to assert the special defenses and to file the counterclaim. The uncontroverted evidence reflects that Sconyers prepared sufficiently prior to asserting the special defenses and filing the counterclaim, and he was not obligated to take every imaginable step to confirm the veracity of the information that he obtained.[15] See 52 Am. Jur. 2d 250, Malicious Prosecution § 73 (2019) (with respect to malicious prosecution action,[16] "[a] person is not required to verify the correctness of all the information supporting his or her action to be protected from a malicious prosecution action, but if a reasonable person would investigate further before beginning the prosecution, the defendant in a malicious prosecution action will be liable for his or her failure to do so" (footnote omitted)). In addition, without any indication that Sconyers had reason to believe that Laser had given him inaccurate information; see footnote 14 of this opinion; Sconyers was entitled to rely on the information provided to him by Laser. See 4 Restatement (Third), Torts, Liability for Economic Harm § 24, comment (f) (2019) ("an attorney is generally entitled to rely on the factual claims made by a client so long as they are not patently unreasonable or known to be false"). Accordingly, the plaintiff's claim fails.

Additionally, the plaintiff's contention that Sconyers lacked probable cause because he was not an experienced legal malpractice litigator is unavailing. Although Sconyers admitted that he had never tried a legal malpractice case prior to being retained by the Laser defen-

dants in the collection action, the uncontroverted evidence in the record demonstrates that Sconyers practiced law for forty years, thirty-six years of which were focused on his practice in Connecticut, and that he consulted several attorneys and performed legal research prior to asserting the special defenses and filing the counterclaim sounding in legal malpractice. The probable cause standard requires consideration of whether "a reasonable attorney familiar with Connecticut law would believe he or she had probable cause . . . ." (Internal quotation marks omitted.) *Byrne* v. *Burke*, supra, 112 Conn. App. 275. An attorney is not required to have extensive experience in the area of law at issue in order to meet this standard. Thus, we reject the plaintiff's claim.

In sum, with respect to the trial court's granting of the Laser defendants' motion for summary judgment, we agree with the plaintiff that there existed genuine issues of material fact as to whether the Laser defendants (1) had probable cause to assert the special defenses and to file the counterclaim and (2) relied in good faith on the advice of the Sconyers defendants, and, therefore, we conclude that the court improperly granted the Laser defendants' motion for summary judgment. With respect to the court's granting of the Sconyers defendants' motion for summary judgment, we reject the plaintiff's claims, and, therefore, we conclude that the court did not err in granting the Sconyers defendants' motion for summary judgment.

The judgment is reversed in part and the case is remanded with direction to deny the motion for summary judgment filed by Frederick J. Laser and Laser Building Company on July 5, 2017, and for further proceedings in accordance with law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The record reflects that Laser is the vice president of Laser Building Company.

[2] J. Michael Sconyers is a partner at Ackerly Brown, LLP.

[3] The plaintiff's license to practice law in Connecticut currently is suspended.

[4] Laser Building Company was named as a defendant in the *Frey* action, but Laser, in his individual capacity, was not a party thereto. The record in the present action is inconsistent on this point; that is, Laser, Laser Building Company, and the Laser defendants collectively are each referred to as defendants in the *Frey* action. In its memorandum of decision granting the defendants' respective motions for summary judgment, the trial court stated that the plaintiff was retained to represent the Laser defendants collectively in the *Frey* action. For the sake of avoiding confusion, and because none of the parties raises the issue of the discrepancy, we refer to the Laser defendants collectively as having been named defendants in the *Frey* action.

[5] On June 6, 2013, Hassett and Donnelly, P.C., filed a firm appearance in lieu of the individual appearance filed by Attorney Barrett.

[6] The plaintiff named "Fred Laser D/B/A Laser Building Company" as the sole defendant in the collection action. The plaintiff named both Laser and Laser Building Company as defendants in the present action and alleged that their conduct, as well as the conduct of the Sconyers defendants, in the collection action constituted vexatious litigation. In its memorandum of decision granting the defendants' respective motions for summary judgment, the trial court also stated that the plaintiff filed the collection action against the

Laser defendants collectively. In an effort to avoid confusion, and because none of the parties raises the issue of the discrepancy, we refer to the Laser defendants collectively as having been named defendants in the collection action. Notwithstanding the foregoing, it is unclear on what basis the plaintiff could prevail on a vexatious litigation claim against Laser Building Company when the only defendant named in the collection action was Laser individually.

[7] The plaintiff improperly combined in one single count of his complaint claims for both common-law vexatious litigation and statutory vexatious litigation under General Statutes § 52-568. See Practice Book § 10-26 (distinct causes of action shall be numbered separately in complaint).

[8] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[9] The plaintiff also claims that the exhibits submitted by the Laser defendants in support of their motion for summary judgment were inadmissible because, inter alia, none of the exhibits complied with Practice Book § 17-46. In his principal appellate brief, the plaintiff provides only a cursory analysis of this claim, and, therefore, we decline to review it. See *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.)).

[10] The plaintiff also asserts that Laser did not retain him in the *Frey* action to provide advice about insurance matters. Because we conclude that the trial court improperly granted the Laser defendants' motion for summary judgment when there existed a genuine issue of material fact concerning Laser's knowledge regarding the Laser defendants' entitlement to insurance coverage, we need not consider this issue further.

[11] In their appellate brief, the Laser defendants claim for the first time that the granting of their motion for summary judgment may be affirmed on the alternative ground that the plaintiff's vexatious litigation claim is untenable because the collection action ended by way of a settlement, which, according to the Laser defendants, did not constitute termination of the action in the plaintiff's favor. The Laser defendants did not present this claim to the trial court or, in accordance with Practice Book § 63-4 (a) (1) (A), raise this claim as an alternative ground for affirmance in their preliminary statement of the issues. As a result, we decline to consider it. See *Red Buff Rita, Inc.* v. *Moutinho*, 151 Conn. App. 549, 557, 96 A.3d 581 (2014) (declining to consider appellee's alternative ground for affirmance raised for first time on appeal and without compliance with § 63-4 (a) (1) (A), and observing that "[o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court. . . . This rule applies equally to alternat[ive] grounds for affirmance." (Internal quotation marks omitted.)).

[12] As we explained in part I of this opinion, the plaintiff does not claim on appeal that a legal malpractice claim grounded in an attorney's failure to advise his or her client regarding insurance issues is not viable, nor does he dispute that he did not advise Laser regarding insurance coverage; rather, his position is that Laser, when he retained the plaintiff in the *Frey* action in June, 2012, knew that the Laser defendants were entitled to insurance coverage for a defense in the *Frey* action and that any contrary representations made by Laser were false.

[13] The plaintiff also claims that the exhibits submitted by the Sconyers defendants in support of their motion for summary judgment were inadmissible because, inter alia, none of the exhibits complied with Practice Book § 17-46. Like his identical claim directed to the granting of the Laser defendants' motion for summary judgment, the plaintiff has failed to adequately brief this claim, and, therefore, we decline to review it. See footnote 9 of this opinion.

[14] Throughout his principal appellate brief, the plaintiff thinly asserts that Sconyers knew that the information provided to him by Laser was false. To the extent that the plaintiff is claiming on appeal that the Sconyers defendants

lacked probable cause on the additional ground that Sconyers filed the counterclaim and special defenses with knowledge that the facts underlying them were false, the plaintiff has failed to provide a meaningful analysis of this claim in his appellate briefs, including a recitation of the specific evidence in the record supporting it, and, therefore, we decline to review it. See *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.)). Even assuming that the plaintiff properly raised this claim on appeal, the evidentiary record with respect to the Sconyers defendants' motion for summary judgment reflects no indication that Sconyers had reason to believe that the information provided to him by Laser was false.

[15] Indeed, "civil proceedings sometimes must be brought before significant investigation of the facts is possible; the means of conducting such an investigation may become available only with commencement of a lawsuit." 4 Restatement (Third), Torts, Liability for Economic Harm § 25, comment (a) (2019).

[16] Our Supreme Court has explained that "the elements of malicious prosecution and common-law vexatious litigation essentially are identical. . . . Although the required showing for both torts essentially is the same, there is a slight difference in that a plaintiff in a malicious prosecution action must show initiation of the proceedings by the defendant. In our cases discussing vexatious litigation claims, we have overlooked this difference because, ordinarily, it is not significant for purposes of considering a claim for vexatious litigation." (Citations omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 405, 948 A.2d 1009 (2008); see also *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 94 ("[a] vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint" (internal quotation marks omitted)).

———————————————