******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Alvord, Elgo and Devlin, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants W Co. and A,
for, inter alia, breach of contract in connection with a dispute arising
from a transaction in which C Co. sold a shopping plaza to M Co., and,
in return, C Co. took back certain purchase money notes from M Co.,
including an amended and restated third promissory note, which con-
tained the terms of the sale of the plaza. The notes subsequently were
assigned to the plaintiff. Prior to the sale of the plaza, W Co., M Co.
and S Co., the sole tenant in the plaza, had entered into a restriction
agreement pursuant to which S Co. agreed to pay W Co. an annual cash
rental subsidy in exchange for its promise not to lease a nearby property
to S Co.'s competitor. Thereafter, M Co. and S Co. signed a letter agree-
ment pursuant to which the cash rental subsidy payments under the
restriction agreement were redirected and applied to pay down the
amounts owed on the first and second purchase money notes. Subse-
quently, B, individually and on behalf of H Co., the general partner of
M Co., and the plaintiff, as the successor in interest to C Co., entered
into a first modification agreement pursuant to which the cash rental
subsidy payments were directed to pay off the second note prior to
paying off the first note. Both the first and second notes thereafter were
paid in full; no payments were directed toward the third note. In its
breach of contract claim, the plaintiff alleged that the defendants failed
to direct the cash rental subsidy payments to pay off the third note
pursuant to an alleged letter of direction, which purportedly provided
for those payments to be applied toward paying off the third note once
the first and second notes were paid in full. The defendants filed a
motion for summary judgment, and the plaintiff filed a memorandum
of law in opposition thereto to which it attached the deposition testimony
of B, a signatory to all of the relevant agreements, to establish the
existence and terms of the alleged letter of direction. The plaintiff did
not submit a copy of the letter of direction. The trial court granted
the defendants' motion for summary judgment and rendered judgment
thereon, determining, inter alia, that B's testimony was barred by the
best evidence rule. *Held* that the plaintiff could not prevail on its claim
that the trial court improperly determined that the best evidence rule
barred the plaintiff's reliance on B's deposition testimony in support of
its opposition to the defendants' motion for summary judgment; the
plaintiff failed to satisfy its burden, pursuant to the applicable rule (§ 10-
3) of the Connecticut Code of Evidence, to prove that B's testimony
was sufficient to establish the former existence, present unavailability
and contents of the letter of direction, as his testimony lacked specific
details regarding the letter's signatories and terms and neither B nor
the plaintiff could locate a copy of the letter, and, therefore, the produc-
tion of the letter at trial would not have been excused.

Argued February 18—officially released July 14, 2020

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Stamford-Norwalk,
where Remedios Rogel, executrix of the estate of Mon-
qidh M. Al-Sawwaf, was substituted as a defendant;
thereafter, the court, *Lee, J.*, granted the motion for
summary judgment filed by the named defendant et al.
and rendered judgment thereon, from which the plain-
tiff appealed to this court. *Affirmed.*

*Kenneth A. Votre*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, with whom were *David A. Ball* and *Philip C. Pires*, for the appellees (named defendant et al.).

*Opinion*

ALVORD, J. The plaintiff, Amity Partners, appeals from the summary judgment rendered by the trial court in favor of the defendants Woodbridge Associates, L.P., and Monqidh M. Al-Sawwaf.[1] On appeal, the plaintiff claims that the court improperly determined that the best evidence rule barred the plaintiff's reliance on certain deposition testimony in support of its opposition to the defendants' motion for summary judgment. We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In 1993, Madison Square Associates, L.P. (Madison), and Amity Road Shopping Center, Inc. (Amity), engaged in a transaction in which Amity sold to Madison the Amity Plaza Shopping Center in New Haven (plaza) and, in return, Amity took back certain purchase money notes from Madison. Included in these purchase money notes was the "Amended and Restated Third Promissory Note" (third note), which contained the terms of the sale of the plaza. In 1998, Amity assigned the notes to Viliam Frankel and Magdalena Franklin, as personal representatives of the estate of Harry Franklin, who then assigned the notes to the plaintiff.[2]

Prior to the sale of the plaza, on May 13, 1992, Woodbridge Associates, L.P., Madison, and The Stop & Shop Supermarket Company (Stop & Shop)—the sole tenant in the plaza—had entered into a restriction agreement, under which Stop & Shop had agreed to pay to Woodbridge Associates, L.P., a cash rental subsidy of no more than $134,000 per annum in exchange for its promise not to lease a nearby property it owned to a competitor of Stop & Shop. On December 21, 1993, Stop & Shop and Madison signed a letter agreement regarding a construction loan Stop & Shop earlier had given to Madison to renovate the plaza. The letter agreement provided for the cash rental subsidy payments under the restriction agreement, originally payable to Woodbridge Associates, L.P., to be redirected and applied to pay down the amounts owed on the first purchase money note (first note) and the second purchase money note (second note) held by Amity and, later, held by the plaintiff as the successor in interest to Amity.[3]

On May 7, 1999, Martin G. Berger, individually and on behalf of McCann Real Equities Investment Holding Company, along with the plaintiff, as successor in interest to Amity, entered into a first modification agreement, under which the parties agreed that the cash rental subsidy paid by Stop & Shop would be directed to pay down the second note prior to paying down the first note. Both the first and second notes were paid in full as of 2007. No payments were directed toward the third note.

The plaintiff brought this action for, inter alia, breach of contract against the defendants, alleging, among other things, that the defendants failed to direct payment to pay off the third note, pursuant to an alleged letter of direction, which purportedly provided for the cash rental subsidy payments to be applied toward paying off the third note once the first and second notes were paid in full. In the operative complaint,[4] the plaintiff alleges that its breach of contract claim is supported by the contents of the restriction agreement, the letter agreement, and the first modification agreement.[5] On June 22, 2018, the defendants filed a motion for summary judgment. On August 17, 2018, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment. In support of its opposition, the plaintiff attached the deposition transcript of Berger, a former partner of Woodbridge Associates, L.P., and signatory to the relevant documents,[6] in order to establish the existence and terms of the alleged letter of direction. Berger testified that a letter of direction "directed Stop & Shop to apply the restriction payment to the third note, and it was required [to do so] to [his] recollection, by Amity . . . as a condition of accepting the third note or the amended and restated third note." The plaintiff did not submit a copy of the letter of direction.

The court, *Lee*, *J.*, granted the defendants' motion for summary judgment on October 1, 2018. In its memorandum of decision, the court stated that the "[p]laintiff cites to no authority under which [Berger's] testimony would be admissible. Indeed, it is barred by the best evidence rule as set forth in [§ 10-1 of the Connecticut Code of Evidence], which provides, [t]o prove the content of a writing . . . the original writing . . . must be admitted in evidence, except as otherwise provided . . . . As the [c]ommentary to the [r]ule provides, [t]he proponent must produce the original of a writing . . . when attempting to prove the contents thereof, unless production is excused. See also [C. Tait & E. Prescott] Tait's Handbook of Connecticut Evidence (5th Ed. [2014]) § 10.1.2. If a document is not yet in evidence, a witness cannot testify concerning the contents of a document not yet in evidence. Id., § 10.1.3. Here, [the] plaintiff is trying to prove the content of this letter of direction. But, by failing to attach this document to its opposition papers (or elsewhere), it has not adduced admissible evidence in opposition to [the] defendants' motion for summary judgment." (Internal quotation marks omitted.) The plaintiff filed a motion for reconsideration on October 22, 2018, which was denied by the court on December 5, 2018. This appeal followed.

Before we address the plaintiff's claim, we first set forth the applicable standard of review of a trial court's ruling on a motion for summary judgment, along with relevant legal principles. "Practice Book § [17-49] pro-

vides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Once the moving party has met its burden [of production] . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t [is] incumbent [on] the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Citations omitted; internal quotation marks omitted.) *Ferrari* v. *Johnson & Johnson, Inc.*, 190 Conn. App. 152, 156–57, 210 A.3d 115 (2019).

"Practice Book § 17-45 provides in relevant part that [a] motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . . That section does not mandate that those documents be attached in all cases, but we note that [o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § [17-45], although containing the phrase *including but not limited to*, contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment." (Emphasis in original; internal quotation marks omitted.) *Gianetti* v. *Anthem Blue Cross & Blue Shield of Connecticut*, 111 Conn. App. 68, 72–73, 957 A.2d 541 (2008), cert. denied, 290 Conn. 915, 965 A.2d 553 (2009).

On appeal, the plaintiff claims that "[t]he testimony of [Berger] established the existence of a document directing the payments of the [third note] from the Stop & Shop payment stream." The plaintiff further claims that "[t]he testimony of [Berger] is case determinative in connection with the motion for summary judgment . . . [and] . . . in and of itself, establishes a genuine issue of material fact as to whether there was a written agreement obligating the payment of the [third

note] from the Stop & Shop payments."[7] Accordingly, the plaintiff argues that the court erred in determining that Berger's testimony would be inadmissible at trial and that it, therefore, could not support its opposition to the defendants' motion for summary judgment. The plaintiff argues that the testimony would not be barred by the best evidence rule because "[t]he parties [agree that] neither one had possession of the alleged document," and, therefore, Berger's testimony is admissible under an exception to the best evidence rule. In response, the defendants argue that the testimony would be inadmissible at trial because it would be barred by the best evidence rule.[8] We agree with the defendants.

"As defined by our Supreme Court, the best evidence rule forces a party to produce the original writing, if it is available, when the terms of that writing are material and must be proved. . . . The best evidence rule typically applies when attempting to prove the contents of instruments such as deeds, wills or contracts, where a slight variation of words may mean a great difference in rights. . . . The basic premise justifying the rule is the central position which the written word occupies in the law." (Citations omitted; internal quotation marks omitted.) *Coelm* v. *Imperato*, 23 Conn. App. 146, 150, 579 A.2d 573, cert. denied, 216 Conn. 823, 581 A.2d 1054 (1990).

Section 10-3 of the Connecticut Code of Evidence provides four situations in which secondary evidence may be introduced to establish the contents of a document. Those situations include (1) when the originals are lost or destroyed, (2) when the originals are not reasonably obtainable, (3) when the originals are in the possession or control of the opponent, or (4) when the contents relate to a collateral matter. Conn. Code Evid. § 10-3. "[Our] cases and the commentaries are . . . in substantial agreement that a party must undertake a twofold burden in order to recover on a document that he cannot produce. Such a party must demonstrate both (a) the former existence and the present unavailability of the missing document, and (b) the contents of the missing document." *Connecticut Bank & Trust Co.* v. *Wilcox*, 201 Conn. 570, 573, 518 A.2d 928 (1986); see also *Host America Corp.* v. *Ramsey*, 107 Conn. App. 849, 855, 947 A.2d 957, cert. denied, 289 Conn. 904, 957 A.2d 870 (2008). Whether a party sufficiently has demonstrated former existence and present unavailability is a question of fact. See *Central National Bank of New York* v. *Bernstein*, 15 Conn. App. 90, 92, 544 A.2d 239, cert. denied, 209 Conn. 806, 548 A.2d 436 (1988).

In the present case, the plaintiff claims that the defendants failed to direct payment of the cash rental subsidy to the third note in accordance with the terms of the alleged letter of direction. The plaintiff, however, has failed to provide that letter of direction to the court

as evidence of the terms requiring such direction of payment. The plaintiff's counsel explained at oral argument on summary judgment and before this court that neither he nor the plaintiff had possession of the letter of direction, nor could the plaintiff identify any person who knew of its whereabouts. The plaintiff accordingly seeks to introduce secondary evidence of the letter of direction under an exception to the best evidence rule, claiming that neither party had possession of the document.

In support of the letter of direction's former existence, present unavailability and contents; see *Connecticut Bank & Trust Co.* v. *Wilcox*, supra, 201 Conn. 573; the plaintiff attached Berger's deposition testimony as an exhibit to its opposition to the defendants' motion for summary judgment. In his deposition, Berger testified that the letter of direction "directed Stop & Shop to apply the restriction payment to the third note, and it was required [to do so] to [his] recollection, by Amity . . . as a condition of accepting the third note or the amended and restated third note." When asked if he had a copy of the letter of direction in his possession, he testified that he did not. The plaintiff did not provide any further evidence in this regard.

The plaintiff has not satisfied its burden to establish the grounds for admission of secondary evidence, pursuant to § 10-3 of the Connecticut Code of Evidence. Berger's deposition testimony fails to establish that the document once existed. He testified during his deposition that he "remember[s] an agreement called, I think it was entitled 'Letter of Direction' . . . ." As the trial court found, however, he failed to identify the date of the letter, as well as the parties to the letter. Additionally, in clarifying what he remembered about the letter of direction, he said: "I may be remembering incorrectly, but I don't think so," and, as the trial court noted, he admitted: "I could possibly be wrong." In accordance with *Connecticut Bank & Trust Co.* v. *Wilcox*, supra, 201 Conn. 573, it was the plaintiff's burden to prove that the secondary evidence presented to the court was sufficient to establish the former existence, present unavailability and contents of the letter of direction. Because Berger's testimony lacks specific details regarding the document's signatories and terms, and because neither Berger nor the plaintiff could locate a copy of the letter of direction, we conclude that the plaintiff has not met this burden and that the production of the letter of direction, at trial, would not be excused.

Accordingly, the court did not err when it declined to consider Berger's testimony in ruling on the defendants' motion for summary judgment, as his testimony is barred by the best evidence rule.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Al-Sawwaf was a general partner of Woodbridge Associates, L.P. He died

during the pendency of this action, and Remedios Rogel, the executrix of his estate, was substituted as a defendant. Woodbridge Associates, Inc., was also named as a defendant but is nonappearing. For simplicity, we refer to those parties collectively as the defendants and individually by name where appropriate.

[2] Harry Franklin owned 100 percent of the issued stock in Amity. After his death on March 10, 1993, his ownership interest, including the three notes acquired from the sale of the plaza to Madison, became assets of his estate. The plaintiff was formed to distribute assets of the Franklin estate to family members of Harry Franklin. The plaintiff's membership consists of all the siblings who were to inherit shares of the notes held by Viliam Frankel and Magdalena Franklin, as personal representatives of the estate of Harry Franklin. Viliam Frankel was a partner of the plaintiff and was involved in the sale of the plaza to Madison.

[3] The record on appeal includes the deposition of Martin G. Berger, vice president of McCann Real Equities Series 10, Inc. (McCann), a real estate development firm which was the managing member and general partner of Madison. McCann created Woodbridge Associates, L.P., to develop property located near the plaza in Woodbridge. As testified to by Berger, Woodbridge Associates, L.P., and Madison were "related entities" and, due to their ownership congruence, Woodbridge Associates, L.P., would receive "the benefit of having [Madison] benefit" when "Stop & Shop us[ed] the funds [of the rental subsidy payments] to retire the [first and second] notes."

[4] The operative complaint alleged fourteen counts against the various defendants. Count one alleged breach of contract against Woodbridge Associates, L.P., and Woodbridge Associates, Inc. Count two alleged liability of Al-Sawwaf, the general partner of Woodbridge Associates, L.P. Count three sought to impose liability on Al-Sawwaf by piercing the corporate veil of Woodbridge Associates, L.P. Counts four through fourteen alleged misrepresentation, conversion, unjust enrichment, statutory theft, violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and civil conspiracy. The plaintiff did not oppose the defendants' motion for summary judgment as to counts four through fourteen and, on appeal, does not challenge the judgment rendered on those counts.

[5] As the court noted during the hearing on the defendants' motion for summary judgment, and as is readily apparent after our review of the relevant documents, nowhere in the three documents is there any reference to the third note.

[6] On behalf of Madison and Woodbridge Associates, L.P., Berger signed the restriction agreement and the letter agreement. He signed the third note and the agreement modifying the third note on behalf of Madison, and signed the first modification agreement individually and on behalf of McCann Real Equities Investment Holding Company, the general partner of Madison.

[7] The plaintiff also claims that the court erred in denying its motion for reconsideration. Because the plaintiff does not provide any legal analysis of this claim to support its assertion, we consider this claim to be inadequately briefed, and, therefore, we decline to review it. "Claims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." (Internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 33, 144 A.3d 420 (2016).

[8] The defendants argue in the alternative that the court's judgment can be affirmed on the ground that Berger's deposition testimony would be inadmissible under our hearsay rules. Because we agree with the defendants that the testimony is inadmissible under the best evidence rule, we affirm the court's judgment on that ground and need not consider the defendants' alternative argument.