******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ROBERT ROUSSEAU ET AL. *v.* RICHARD P. WEINSTEIN ET AL.
## (AC 42902)

Alvord, Prescott and Moll, Js.

*Syllabus*

The plaintiffs, R and D Co., sought to recover damages from the defendants, R's former spouse, P, and P's attorneys and their law firms, for, inter alia, vexatious litigation. R and P were married in 2007, and, in 2010, R commenced a dissolution action. P filed a cross complaint, alleging that she suffered personal financial losses as a result of financial misconduct, fraud, and duress committed by R, acting both individually and through D Co., in connection with several financial investments that she made during their marriage. In 2011, P retained the defendant attorneys to assist with the dissolution action and to file a civil action against the plaintiffs, alleging essentially the same claims of financial misconduct that she had made in the dissolution action. Various other individuals and entities who allegedly aided and abetted the plaintiffs were also named as defendants in the civil action. Following a trial in the dissolution action, the court dissolved the marriage between R and P, found that R had not, either individually or through D Co., engaged in the financial misconduct claimed by P, and ordered P to release and hold the plaintiffs indemnified and harmless from any and all claims pending in the civil action. P appealed the dissolution decision and filed a motion to stay the civil action pending a decision on the appeal, which the court granted. The dissolution decision was affirmed and, a few weeks later, the defendants withdrew the civil action. The plaintiffs then filed this vexatious litigation action against P and her attorneys, alleging that the claims made by the defendants in the civil action were identical to those made in the dissolution action and, therefore, were precluded by the prior pending action doctrine and lacked probable cause. The defendants filed for summary judgment, which the court granted with respect to the defendant attorneys, and the plaintiffs appealed to this court. *Held*:

1. The prior pending action doctrine was not applicable and, therefore, did not prevent the defendants from being entitled to summary judgment as a matter of law: the fact that the civil action may have been subject to dismissal under the prior pending action doctrine did not make it inherently vexatious, even if it was exactly or virtually alike to the dissolution action; moreover, the policies behind the prior pending action doctrine, namely, to prevent unnecessary litigation that burdens the courts and to avoid a multiplicity of actions and inconsistent judgments, did not support expanding the doctrine to adopt a bright-line rule that its applicability could be the foundation for finding a lack of probable cause in a subsequent vexatious litigation action; furthermore, a finding that the applicability of the prior pending action doctrine created a prima facie case of vexatious litigation would conflict with the discretionary nature of the doctrine.

2. There was no genuine issue of material fact as to whether the defendants had probable cause to continue the civil action following the dissolution decision: the standard to determine the existence of probable cause was whether, on the basis of the facts known, a reasonable attorney familiar with Connecticut law would believe that he had probable cause to bring the action, and whether the trial court applied the correct standard was irrelevant because this court conducted a de novo review of the record; moreover, the court declined to review the claim that the defendants lacked probable cause to commence the civil action because that claim was raised for the first time at oral argument; furthermore, the defendants had probable cause to continue the civil action following the dissolution decision, as it was objectively reasonable for them to move for a stay rather than to withdraw the action because, until the court reviewed the propriety of the dissolution decision and the indemnification order, they would not have been able to determine which claims, if any, survived against R, D Co. and the other defendants.

Argued January 6—officially released May 25, 2021

*Procedural History*

Action to recover damages for vexatious litigation, and for other relief, brought to the Superior Court in the judicial district of New Haven and transferred to the judicial district of Hartford, where the court, *Moukawsher, J.*, granted the motions for summary judgment filed by the named defendant et al., and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Daniel J. Krisch*, for the appellants (plaintiffs).

*Cristin E. Sheehan*, with whom, on the brief, were *James L. Brawley* and *Patrick J. Day*, for the appellees (named defendant et al.).

*Raymond J. Plouffe, Jr.*, for the appellees (defendant Mark H. Dean et al.).

*Opinion*

ALVORD, J. The plaintiffs, Robert Rousseau and Preferred Display, Inc.[1] (Preferred Display), appeal from the summary judgment rendered by the trial court in favor of the defendants[2] Mark H. Dean, Mark H. Dean, P.C.,[3] Richard P. Weinstein, and Weinstein & Wisser, P.C.[4] On appeal, the plaintiffs claim the court erred by holding that (1) the marital dissolution action between Rousseau and Madeleine Perricone was not a prior pending action and (2) the defendants had probable cause to continue a civil action based on similar claims against Rousseau in the dissolution action. We conclude that probable cause to continue the action existed and, accordingly, affirm the judgment of the trial court.

The following facts, as alleged in the complaint, and procedural history are relevant to our discussion of the claims on appeal. Rousseau and Perricone were married in 2007. On or about March 30, 2010, Rousseau commenced a dissolution action (dissolution action). Perricone filed a cross complaint in the dissolution action, alleging that she suffered personal financial losses as a result of financial misconduct, fraud, and duress committed by Rousseau, acting both individually and through Preferred Display, in connection with several financial investments she made during the course of their marriage.

On or about September 1, 2011, Perricone retained Weinstein to commence a civil action (civil action) against the plaintiffs. On or about September 22, 2011, Dean was retained to assist with the prosecution of Perricone's claims in the dissolution action. Dean consulted with Carlo Forzani, one of Perricone's dissolution attorneys, and became familiar with the details of the financial misconduct claims that were being made against Rousseau in the dissolution action. Dean also consulted with Weinstein and learned that the proposed civil action would be making the same claims of financial misconduct that had been made by Perricone in the dissolution action.

From about September 1 through November 30, 2011, Weinstein consulted with Perricone, her dissolution attorneys, and the forensic accountant involved in the dissolution action to investigate the details of Perricone's claims of financial misconduct against Rousseau. On November 30, 2011, Weinstein filed the civil action in which Perricone asserted claims of breach of fiduciary duty, securities fraud, misappropriation of funds, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., against Rousseau and Preferred Display. The civil action also contained claims against various individuals and entities that allegedly aided and abetted Rousseau's financial misconduct.[5] Although the claims of financial misconduct alleged in the civil action were more specific

and detailed, they were essentially the same allegations raised and prosecuted by Perricone in her cross complaint against Rousseau in the dissolution action.

On December 2, 2011, in the dissolution action, Perricone moved to consolidate the civil action into the dissolution action. During oral argument on the motion, Perricone's dissolution attorney, Jeffrey Ginzberg, argued that consolidation was necessary because some of the issues that would be litigated were "part and parcel" of both actions. Ginzberg further argued: "I don't think it's fair to have to have my client go through an ordeal that's [going to] take an entire month to present to the court only to have to turn around and do it all over again involving basically the same issues and this time in the second case, having a set of defendants from which to recover the money." The court denied Perricone's motion to consolidate.

On or about December 20, 2011, Dean filed an appearance on behalf of Perricone in the civil action, appearing in addition to Weinstein.

Trial in the dissolution action occurred over twelve days in January, February and March, 2012. On or about January 23, 2012, Rousseau wrote to Perricone, Weinstein, and Dean, stating that the claims being made in the civil action as to Rousseau and Preferred Display were the same as those that Perricone was alleging and prosecuting in the dissolution action. As a result, Rousseau demanded that Perricone, Weinstein, and Dean withdraw the civil action. They refused to do so.

On August 6, 2012, the trial court issued its memorandum of decision dissolving the marriage of Rousseau and Perricone (dissolution decision). In the dissolution decision, the court concluded that Rousseau did not, either individually or through Preferred Display, engage in the financial misconduct claimed by Perricone and that Perricone's claims were not credible. The court further explained that it had examined the allegations of the civil action and that the "allegations raised against [Rousseau] and [Preferred Display] are more specific and detailed but essentially the same allegations raised by [Perricone] in the dissolution action." As part of the dissolution decision, the court ordered Perricone to "release and hold [Rousseau and Preferred Display] indemnified and harmless from any and all claims of action pending in Hartford Superior Court captioned *Perricone* v. *Rousseau*, bearing docket number HHD-CV-11-6027402-S. In addition, [Perricone] shall be responsible for 100 percent of [Rousseau's] legal fees in defending the civil action if [Rousseau] and/or [Preferred Display] remain parties to that action."

Perricone timely appealed the dissolution decision, arguing, in part, that the trial court erred by ordering her to release and hold Rousseau harmless in the civil action. On March 25, 2014, this court affirmed the disso-

lution decision.[6] See *Rousseau* v. *Perricone*, 148 Conn. App. 837, 854, 88 A.3d 559 (2014). On April 17, 2014, Weinstein withdrew the civil action.

In August, 2014, the plaintiffs commenced the present action against Perricone and Weinstein. In October, 2015, the plaintiffs added Dean and his law firm as additional defendants. In their three count third amended complaint, the plaintiffs asserted common-law and statutory claims of vexatious litigation against the defendants. The plaintiffs alleged that the allegations and claims made by the defendants in the civil action were identical to those made in the dissolution action and, therefore, were precluded by the prior pending action doctrine and lacked probable cause.

On January 7, 2019, Weinstein and Dean moved for summary judgment. Weinstein moved for summary judgment on the grounds that the plaintiffs waived their right to assert the prior pending action doctrine as a defense by failing to file timely a motion to dismiss and that he had probable cause to believe that the civil action was not identical to the dissolution action. Dean moved for summary judgment on the ground that there was no prior pending action when the civil action was commenced because the constructive trust claim in Perricone's second amended cross complaint had been withdrawn. The court, *Moukawsher, J.*, granted the motions of the defendants,[7] and the plaintiffs appealed. Additional facts will be set forth as necessary.

Before we address the plaintiffs' claims on appeal, we first set forth the applicable standard of review of a trial court's granting of a motion for summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Once the moving party has met its burden [of production] . . . the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . [I]t [is] incumbent [on] the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists. . . . The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logi-

cally correct and find support in the record." (Internal quotation marks omitted.) *Amity Partners* v. *Woodbridge Associates, L.P.*, 199 Conn. App. 1, 6–7, 234 A.3d 1109 (2020).

I

The plaintiffs first claim that "the trial court improperly held that the [dissolution action] was not a prior pending action, and, thus, the civil [action] was not vexatious, even though Perricone made the same claims against the same parties in the two suits.'"[8] We disagree with the plaintiffs' contention that an action subject to dismissal under the prior pending action doctrine is necessarily vexatious and that the defendants were not entitled to summary judgment as a matter of law.

The following additional facts and procedural history are relevant to our resolution of this claim. In count two of her second amended cross complaint in the 2010 dissolution action, Perricone alleged a constructive trust claim against Rousseau. Specifically, Perricone alleged that Rousseau committed various acts of financial misconduct that caused her to lose millions of dollars. Perricone alleged, inter alia, that Rousseau "exercised undue influence over [her] with respect to her finances," manipulated her and became engaged in numerous financial transactions to her detriment, and "exercised superiority or dominance over [her] with respect to her finances." On November 30, 2011, Weinstein filed the civil action. The civil action contained many of the same claims of financial misconduct that Perricone raised against Rousseau in the dissolution action. On December 1, 2011, Perricone withdrew count two of her second amended cross complaint in the dissolution action.

On April 16, 2012, the plaintiffs filed a motion to dismiss the civil action pursuant to the prior pending action doctrine. Specifically, the plaintiffs argued that the prior pending action doctrine was applicable to the civil action because the claims made against the plaintiffs in the civil action were essentially the same as those being made against Rousseau in the dissolution action. In response, Perricone argued that the court lacked authority to grant the motion because the plaintiffs failed to file their motion within thirty days of the filing of their appearances as required by Practice Book § 10-30. She also argued that the prior pending action doctrine did not apply as a result of the significant differences between a tort action and a dissolution action.

While the motion to dismiss was pending, the court issued its memorandum of decision in the dissolution action. Perricone appealed the decision. On August 29, 2012, Weinstein filed a motion to stay the civil action pending a decision in the dissolution appeal. At oral argument on the motion to stay, the plaintiffs again

raised the prior pending action doctrine issue and argued that the court still could decide their motion to dismiss. The court, however, declined to rule on the motion to dismiss and granted the motion to stay, staying all proceedings in the civil action until the resolution of the dissolution appeal. Following the release of this court's decision affirming the dissolution decision, Weinstein withdrew the civil action.

Thereafter, the plaintiffs commenced the present action against the defendants for vexatious litigation. On January 7, 2019, Weinstein, Dean, and Perricone moved for summary judgment. On April 23, 2019, the trial court, *Moukawsher, J.*, issued its memorandum of decision on the three motions for summary judgment. The court denied Perricone's motion, concluding that the issue of whether she relied on the advice of her attorneys in good faith when refusing to withdraw the civil action following the dissolution decision was a question for the fact finder. The court, however, granted the Weinstein and Dean motions for summary judgment on the grounds that the dissolution action was not a prior pending action and that they had probable cause to continue the civil action in which they moved for a stay, pending the appeal of the dissolution decision. In regard to its conclusion that the dissolution action was not a prior pending action, the court held that the dissolution action and the civil action "[were not] sufficiently alike to apply the rule." The court further concluded that "[b]ecause the prior pending action rule [did not] apply to the civil [action] it [does not] make the civil [action] automatically vexatious. . . . The only thing decided so far is that [the] civil [action] was not automatically vexatious for violating the prior pending action rule."

On appeal, the plaintiffs argue that the close identity between the two actions, potentially subjecting the civil action to dismissal under the prior pending action doctrine, should have precluded the court from rendering summary judgment in favor of the defendants.[9] The plaintiffs argue, expansively, that "the pendency of a prior suit establishes want of probable cause for a second suit between the same parties over the same issues." The plaintiffs cite authority from other jurisdictions in support of their argument. At oral argument before this court, however, the plaintiffs' counsel conceded that there are no Connecticut cases that apply the prior pending action doctrine in this manner. The plaintiffs, thus, are asking this court to adopt a bright-line rule that the applicability of the prior pending action doctrine of dismissal may be the foundation for finding a lack of probable cause supporting a subsequent vexatious litigation action. For the following reasons, we decline the plaintiffs' invitation.

"It has long been the rule that when two separate lawsuits are virtually alike the second action is amena-

ble to dismissal by the court. . . . [T]he prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. . . . The policy behind the doctrine is to prevent unnecessary litigation that places a burden on crowded court dockets." (Citation omitted; internal quotation marks omitted.) *A1Z7, LLC* v. *Dombek*, 188 Conn. App. 714, 721, 205 A.3d 740 (2019). "The rule, however, is not one of unbending rigor, nor of universal application, nor a principle of absolute law . . . . Accordingly, the existence of claims that are virtually alike does not, in every case, require dismissal of a complaint." (Citation omitted; internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 396, 973 A.2d 1229 (2009).

"[T]he trial court must determine in the first instance whether the two actions are: (1) exactly alike, i.e., for the same matter, cause and thing, or seeking the same remedy, and in the same jurisdiction; (2) virtually alike, i.e., brought to adjudicate the same underlying rights of the parties, but perhaps seeking different remedies; or (3) insufficiently similar to warrant the doctrine's application. In order to determine whether the actions are virtually alike, we must examine the pleadings . . . to ascertain whether the actions are brought to adjudicate the same underlying rights of the parties. . . . The trial court's conclusion on the similarities between the cases is subject to our plenary review." (Internal quotation marks omitted.) *A1Z7, LLC* v. *Dombek*, supra, 188 Conn. App. 721–22.

"Following that initial determination, the court must proceed to a second step. If the court has concluded that the cases are exactly alike or insufficiently similar, the court has no discretion; in the former situation, it must dismiss the second action, and in the latter, it must allow both cases to proceed. . . . Where actions are virtually, but not exactly alike, however, the trial court exercises discretion in determining whether the circumstances justify dismissal of the second action." (Citation omitted; internal quotation marks omitted.) *Kleinman* v. *Chapnick*, 140 Conn. App. 500, 506, 59 A.3d 373 (2013).

We conclude that the applicability of the prior pending action doctrine cannot compel a determination that the litigation is vexatious. Even if the civil action was exactly or virtually alike to the dissolution action, the fact that the civil action may have been subject to dis-

missal under the doctrine does not make it inherently vexatious. The overarching policy concerns for the prior pending action doctrine inform our conclusion. "The policy behind the doctrine is to prevent unnecessary litigation that places a burden on crowded court dockets." (Internal quotation marks omitted.) *A1Z7, LLC* v. *Dombek*, supra, 188 Conn. App. 721. The prior pending action doctrine also is designed to avoid a multiplicity of actions and inconsistent judgments and is "based on the principles of comity, convenience, and the necessity for orderly procedure in the trial of contested issues." 1 C.J.S., Abatement and Revival § 20 (2021); see also *Curcio* v. *Hartford Financial Services Group*, 472 F. Supp. 2d 239, 243 (D. Conn. 2007) ("[t]he prior pending action doctrine is one of federal judicial efficiency to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments" (internal quotation marks omitted)). In addition to the fact that the court is permitted, but not required, to dismiss an action that is virtually alike to one that is already pending; *Kleinman* v. *Chapnick*, supra, 140 Conn. App. 506; in certain circumstances, the court may choose to abate or stay the first action in favor of the second. 1 Am. Jur. 2d, Abatement, Survival, and Revival § 8 (2021). "In some cases, the public interest may be an important factor in determining whether an additional pending action should be abated. Where the court of a slightly later filing provides a more suitable forum for complete and expeditious resolution of issues, that court may choose not to abate the lawsuit." (Footnote omitted.) Id. The focus of the prior pending action doctrine, therefore, is on judicial efficiency and on promoting orderly procedure in the trial of contested issues. Simply put, none of the enumerated policy considerations for the doctrine indicates that it was intended to apply in the manner that the plaintiffs suggest: that it may be used proactively to establish want of probable cause in a vexatious litigation action.

We are mindful that this court has noted that, when a prior action is pending, there cannot be any reason for bringing a second action and that the second action therefore "must be oppressive and vexatious." (Internal quotation marks omitted.) *A1Z7, LLC* v. *Dombek*, supra, 188 Conn. App. 721. This statement was made within the context of a recitation of the common-law history describing a good cause for the abatement of an action by a court. We are unaware of any Connecticut authority that has used this language to conclude that the applicability of the prior pending action doctrine creates a prima facie case of vexatious litigation, which is the position that the plaintiffs advocate here.

The plaintiffs' argument also fails to consider the nuances and scope of the prior pending action doctrine. The plaintiffs' position that the applicability of the prior pending action doctrine may be the foundation for find-

ing a lack of probable cause in a vexatious litigation action conflicts with the discretionary nature of the doctrine. Dismissal under the doctrine is not mandatory if the second action is "virtually alike" to a pending action. *Kleinman* v. *Chapnick*, supra, 140 Conn. App. 506. If the court has the discretion to decline to dismiss a "virtually alike" action, that action indisputably cannot be vexatious. Moreover, dismissal of a "virtually alike" action pursuant to the prior pending action doctrine does not compel a conclusion that the action necessarily was vexatious. The court may have dismissed the action for policy reasons, including the avoidance of inconsistent judgments, the convenience of the parties, or to ensure orderly procedure in the trial of contested issues. See 1 C.J.S., supra, § 20. The mere fact that the prior pending action doctrine applies, thus, by itself, cannot support a conclusion that the action is vexatious. This proposition also prevails where an action is "exactly alike" to a prior action. Although the court is required to dismiss a second action that is "exactly alike" to a prior action; *Kleinman* v. *Chapnick*, supra, 506; it does not necessarily follow that the commencement of the second action can establish want of probable cause for purposes of a vexatious litigation action. As previously observed, none of the policy considerations for the prior pending action doctrine indicates that it was intended to be applied in such a manner. Applying the prior pending action doctrine in this way also would expand its scope. The prior pending action doctrine is a doctrine of dismissal that gives parties a tool to dismiss unnecessarily duplicative actions. See *A1Z7, LLC* v. *Dombek*, supra, 188 Conn. App. 721. If we were to adopt the plaintiffs' position, the prior pending action doctrine would cease to remain a doctrine of dismissal. Instead, it could be used by parties expansively to commence a vexatious litigation action. In the absence of any compelling authority[10] or cogent policy considerations supporting such an expansion, we decline the plaintiffs' invitation to adopt a bright-line rule that the applicability of the prior pending action doctrine may be the foundation for finding a lack of probable cause in a vexatious litigation action. We therefore conclude that the applicability of the prior pending action doctrine has no bearing on the present case and, accordingly, does not prevent the defendants from being entitled to summary judgment as a matter of law.

## II

The plaintiffs next claim that the trial court erred in rendering summary judgment in favor of the defendants because there was a genuine issue of material fact as to whether the defendants had probable cause to continue prosecuting the civil action following the dissolution decision and the trial court applied the wrong test for probable cause. Regardless of whether the trial court applied the correct probable cause test, we conclude

that the defendants had probable cause to continue the civil action.

The following additional facts and procedural history are relevant to our consideration of this claim. In September, 2011, Perricone contacted Weinstein to inquire whether the firm would represent her in a complicated, commercial matter. Weinstein held an initial conference with Perricone, and, after their conversation, Weinstein began collecting evidence to corroborate Perricone's statements. On the basis of his investigation, Weinstein believed he had substantial evidence in support of Perricone's claim that Rousseau had engaged in self-dealing and, therefore, that he had probable cause to commence a civil action alleging financial misconduct. Weinstein then drafted the civil complaint and, after confirming with Perricone's dissolution attorneys that the facts, as alleged, were accurate, filed the complaint.

Dean originally was retained by Forzani to provide limited assistance in the dissolution action. Dean prepared a comprehensive memorandum of law regarding constructive trusts for Forzani's consideration. On the basis of the documentation he received and research he conducted, Dean believed there was adequate legal support for a constructive trust claim against Rousseau in the dissolution action. Although he did not file an appearance in the dissolution action, Dean appeared in the civil action. While representing Perricone in the civil action, Dean assisted Weinstein with discovery and with other pleadings and motions as needed. As a result of the facts relayed to him by Forzani, Weinstein, and Perricone, along with the facts gleaned from the documents he reviewed, Dean believed there was probable cause to commence the civil action.

On August 6, 2012, the dissolution decision was issued. Weinstein believed that the dissolution decision was decided incorrectly. Specifically, he disagreed with the court's statement that the civil action and the dissolution action contained essentially the same allegations. He also believed that the court's order that Perricone release and hold the plaintiffs indemnified and harmless in the civil action violated Perricone's constitutional rights. As a result, he advised Perricone to appeal the dissolution decision.

Weinstein moved to stay the civil action while the dissolution appeal was pending, on the ground that Perricone was appealing the dissolution decision, "including but not limited to that portion of the order of [the court] which affected the present litigation. To that extent, [Perricone] has a Hobson's choice of either pursuing this litigation being obligated to pay for Rousseau's cost expenses as well as indemnifying him, or terminating the litigation. Whether [Perricone] ultimately can or would bifurcate litigation or litigate discreet issues in the instant matter remains to be seen, but until the Appellate Court has had an opportunity

to review the propriety of [the court's] decision and its implications in regard to the instant case, [Perricone] must regrettably request that the matter be stayed pending appellate review and determination of the judgment rendered by [the court] in the dissolution [action]."

On September 10, 2012, Weinstein repeated these arguments at the hearing on the motion to stay. He informed the court that Perricone was going "to challenge the ability of the domestic court to issue the order that [it] did, that directly affects this case, namely the indemnity and attorney's fee provision." He also argued that, as a practical matter, "it is virtually impossible for [Perricone] to be able to go forward in light of the decision from [the court]. And we can't even really analyze, in a proper way, to what extent that decision implicates the ability to go forward on the various counts in this case." The court granted the motion, staying the civil action until the appeal of the dissolution decision had concluded.

On appeal from the dissolution decision, Perricone argued, in relevant part, that the court erred in ordering her to release Rousseau and hold him harmless in the civil action. Perricone argued that, although Rousseau may have been entitled to seek dismissal or summary judgment of her claims in the civil action on res judicata or collateral estoppel grounds, "due process [entitled her] to a full and fair opportunity in the civil action to demonstrate that the elements of [these defenses] have not been satisfied." This court disagreed and upheld the dissolution decision, concluding that "the order regarding the civil case was well within the court's discretion . . . ." *Rousseau* v. *Perricone*, supra, 148 Conn. App. 850. We also noted that, should Perricone continue to pursue the civil action, "she would be entitled to keep for herself" any proceeds from the action that were recovered from any defendant other than Rousseau and Preferred Display. Id. Weinstein withdrew the civil action following Perricone's unsuccessful appeal of the dissolution decision.

In their third amended complaint in the instant matter, the plaintiffs alleged that the defendants lacked probable cause to commence and to continue the civil action. Specifically, the plaintiffs alleged that, because it was evident that Perricone was pursuing the same claims in both the dissolution action and the civil action, which the defendants knew or reasonably should have known was improper, unnecessary, oppressive and vexatious, the defendants lacked probable cause in regard to the civil action. Moreover, the plaintiffs alleged that the defendants lacked probable cause to continue the civil action following the dissolution decision, as the findings of the dissolution court "constituted binding factual and legal determinations of the lack of merit of the civil [action] allegations in favor of the plaintiffs in all material respects . . . ."

The trial court addressed the issue of whether the defendants had probable cause in its memorandum of decision on the defendants' motions for summary judgment. The court focused its probable cause analysis on the defendants' conduct following the dissolution decision because, in the court's view, "Rousseau is only suing about continuing rather than beginning the civil [action and] that is all this decision must cover." Citing *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 912 A.2d 1019 (2007), the court stated that the standard for determining whether the defendants had probable cause "amounts to determining whether a reasonable attorney would believe there were facts sufficient to bring the lawsuit and whether the particular attorney in the case believed in these facts in good faith." Under this standard, the court reasoned that, had Perricone's appeal of the dissolution succeeded and had the civil action been withdrawn prior to the resolution of the dissolution appeal, her claims in the civil action, particularly those against the third parties, would have been lost, exposing the defendants to malpractice actions. The court further stated that "[s]taying the claim, on the other hand, would protect the client's interest while minimizing further expense and harm to the defendants in the civil action by halting those proceedings pending the outcome of the appeal. A reasonable attorney would not think this obviously wrong. And there is no evidence that any of the attorney defendants [did not] sincerely believe there was a long shot chance on appeal. Both lawyers documented the consideration they gave the matter before participating. There is no material dispute that they believed enough of what Perricone claimed to assert those claims on her behalf." In light of these considerations, "after considering the facts in the light most favorable to Rousseau, the court conclude[d] that there was probable cause—it was not obviously wrong—for the lawyers to seek a stay of the civil proceedings pending the appeal of the divorce matter." Accordingly, the court granted the motions for summary judgment as to the defendants.

On appeal, the plaintiffs claim that the trial court applied the wrong test for probable cause. At oral argument before this court, the plaintiffs also stated that, contrary to the trial court's determination, they were challenging the probable cause of the defendants to commence the civil action, in addition to whether they had probable cause to continue it after the dissolution decision. In response, the defendants argue that probable cause existed to commence and to continue the civil action.[11] They further argue that, even if the trial court applied an incorrect standard, this court can affirm on the basis of our de novo review of the record. We agree with the defendants.

We begin by setting forth the relevant legal principles

and standard of review. "In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the [common-law] and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under [General Statutes] § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Internal quotation marks omitted.) *Rozbicki* v. *Sconyers*, 198 Conn. App. 767, 773–74, 234 A.3d 1061 (2020).

"[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man [or woman] in the belief that he [or she] has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he [or she] lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted. . . . [T]he existence of probable cause is an absolute protection against an action for [vexatious litigation], and what facts, and whether particular facts, constitute probable cause is always a question of law." (Internal quotation marks omitted.) Id., 774. Because the question of whether there is probable cause in a vexatious litigation case is a question of law, our scope of review is plenary. *Schaeppi* v. *Unifund CCR Partners*, 161 Conn. App. 33, 46, 127 A.3d 304, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015).

"[In *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 84] [o]ur Supreme Court . . . had the opportunity to consider whether a higher legal standard of probable cause should be applied to attorneys and law firms sued for vexatious litigation. . . . After considering the statute and the competing policy interests, the court concluded that a higher standard should not apply. . . . Instead, in assessing probable cause, the court phrased the critical question as whether on the basis of the facts known by the law firm, a reasonable attorney familiar with Connecticut law would believe he or she had probable cause to bring the lawsuit. . . . As is implied by its phrasing, the standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated the lawsuit." (Internal quotation marks omitted.) *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 774–75.

"[P]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our [common-law] system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories." (Internal quotation marks omitted.) Id., 775.

As a preliminary matter, we decline to review the plaintiffs' claim that Weinstein and Dean lacked probable cause to commence the civil action. "It is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court. . . . Claims that are inadequately briefed generally are considered abandoned." (Citations omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006); see also *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 781, 770 A.2d 1 (2001) (declining to review issue raised for first time at oral argument because it "was neither timely raised nor properly briefed"). In the present action, the trial court focused its analysis on whether Weinstein and Dean had probable cause to continue the civil action following the dissolution decision because, in the court's view, "Rousseau is only suing about continuing rather than beginning the civil [action and] that is all this decision must cover." The plaintiffs disputed this determination of the trial court at oral argument before this court and asserted that they also were challenging whether the defendants had probable cause to commence the civil action. In their principal appellate brief, however, the plaintiffs argue only that the "trial court improperly held that the defendants had probable cause to continue the civil [action] after the unfavorable [dissolution decision] against Perricone . . . ." Their brief contains no analysis on the issue of whether the defendants had probable cause to commence the civil action. Because the plaintiffs failed to brief this issue and raised it for the first time during oral argument before this court, we decline to review it. See *Grimm* v. *Grimm*, supra, 393. As a result, we will presume that the defendants had probable cause to commence the civil action.

We now turn to the remaining issue on appeal, namely, whether the defendants had probable cause to continue pursuing the civil action following the dissolution decision. In its memorandum of decision, the trial court, citing *Falls Church Group, Ltd.*, stated that the

probable cause "standard amounts to determining whether a reasonable attorney would believe there were facts sufficient to bring the lawsuit and whether the particular attorney in the case believed in these facts in good faith." The court also made several observations about what a "reasonable attorney" would do in a comparable situation. The court opined that the "[dissolution decision] certainly would have given reasonable lawyers pause," that "reasonable lawyers would have had to consider their client," and that a reasonable attorney would not think that staying the claim while the appeal was pending was obviously wrong. By citing to the correct probable cause standard and referring numerous times to what a "reasonable attorney" would do, the court thus appears to have applied the correct, objective legal test for probable cause. The plaintiffs, nevertheless, argue that the court applied the wrong standard. Specifically, the plaintiffs argue that by focusing on whether an attorney's actions are "not obviously wrong," the court improperly interjected a subjective element into the established objective test for a probable cause determination. Although we acknowledge that the language the trial court used in its probable cause analysis is not a model of clarity, even if we were to assume that the court applied an incorrect standard, our de novo review leads us to conclude that the defendants had probable cause to continue the civil action.[12]

A party does "not lose probable cause to pursue [an action] because of adverse rulings along the way. The standard for determining probable cause is not whether there are adverse rulings by the court or whether the claim is ultimately determined to be without merit. . . . Rather, the standard is whether the defendant in a vexatious litigation action had knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the [action] in the manner complained of." (Citation omitted; internal quotation marks omitted.) *Schaeppi* v. *Unifund CCR Partners*, supra, 161 Conn. App. 53–54.

We conclude that Weinstein and Dean had probable cause to continue the civil action following the dissolution decision. Although the dissolution decision was unfavorable to the claims alleged in the civil action, Weinstein and Dean did not lose probable cause simply because of this adverse trial court decision. See id., 53. The defendants had probable cause to commence the civil action and, for the same reasons, had probable cause to continue prosecuting the civil action. See id., 53–54 (concluding that defendants had probable cause to continue prosecuting foreclosure action even after unfavorable rulings when they had probable cause to initiate action). Moreover, Weinstein testified during his deposition that he believed the dissolution decision's order that Perricone release and hold Rousseau harmless in the civil action "was Draconian at best" and that it arguably was "unconstitutional because it creates a

muzzle on the ability of a citizen to be able to pursue her rights to litigation." As a result of Weinstein's concerns, Perricone did, in fact, challenge the trial court's indemnification order. Had Perricone prevailed on appeal, the order directing her to release and hold harmless Rousseau and Preferred Display in the civil action would have been reversed, and she would have been permitted to continue prosecuting her claims against the plaintiffs without the sanction of indemnification.

Weinstein's concerns about the indemnification order also led him to believe that moving to stay the civil action during the pendency of the appeal was the preferred course of action. The indemnification order in the dissolution decision stated that Perricone must release only Rousseau and Preferred Display in the civil action. The civil action, however, also contained claims against numerous other parties. See footnote 5 of this opinion. Consequently, Weinstein believed that a stay was necessary because, until the Appellate Court reviewed the propriety of the dissolution decision, Perricone would be unable to determine fully the implications of the indemnity order on her ability to bifurcate or litigate discreet issues in the civil action. At oral argument on the motion to stay, Weinstein repeated this theme, stating that "it is virtually impossible for [Perricone] to be able to go forward in light of the decision from [the court]. And we can't even really analyze, in a proper way, to what extent that decision implicates the ability to go forward on the various counts in this case."

Weinstein further justified his decision to move for a stay instead of withdrawing the action during his deposition, transcript excerpts of which were before the court. Weinstein testified that he pursued a stay in the civil action to "wait to see what the Appellate Court decision would be" because, in his view, "the indemnity provision, the way I read it, applied even if [Perricone] won in the civil [action]." He further stated that, "even though [he] believed there was probably cause to continue the civil [action, Perricone could not do that] because of the indemnity [provision]."

We conclude that Weinstein's decision to move for a stay of the civil action during the pendency of the appeal was objectively reasonable. The civil action contained claims against other parties that allegedly had aided and abetted Rousseau's financial misconduct. These claims, thus, were intertwined with the claims against Rousseau and Preferred Display. Until this court reviewed the propriety of the dissolution decision and the indemnification order, the defendants would have been unable to determine which claims, if any, survived against Rousseau, Preferred Display, and the other defendants in the civil action. As a result of this uncertainty, it was objectively reasonable for the defendants to move for a stay rather than withdrawing the action. See *Rozbicki* v. *Sconyers*, supra, 198 Conn. App. 774–75.

As the trial court stated in its memorandum of decision, "[s]taying the claim . . . would protect [Perricone's] interest while minimizing further expense and harm to the defendants in the civil action by halting those proceedings pending the outcome of the appeal." The defendants, therefore, had probable cause to continue the civil action, move for a stay in that matter, and await the outcome of Perricone's appeal prior to determining how to proceed.

In sum, there was no genuine issue of material fact that the defendants had probable cause to continue the civil action following the dissolution decision. Accordingly, the trial court did not err in granting the defendants' motions for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Rousseau is the president and majority shareholder of Preferred Display.

[2] Madeleine Perricone, the former wife of Rousseau, and Ocean Pier Associates, LLC, also were named as defendants in this action. Perricone's motion for summary judgment was denied and the plaintiffs withdrew their claim against Ocean Pier Associates, LLC. Because Perricone and Ocean Pier Associates, LLC, are not involved in this appeal, our references in this opinion to the defendants are to Mark H. Dean, Mark H. Dean, P.C., Richard P. Weinstein, and Weinstein & Wisser, P.C., only.

[3] Mark H. Dean and Mark H. Dean, P.C., will be referred to collectively in this opinion as Dean.

[4] Richard P. Weinstein and Weinstein & Wisser, P.C., will be referred to collectively in this opinion as Weinstein.

[5] Perricone asserted claims against Valley Bank, now known as New England Bank, Arnaldo Marinelli, Joseph Ramondetta, Hillcrest Investments, LLC, Hillcrest Ventures, LLC, Harry Haralambus, Lambus Partners, Inc., Daniele & Associates, LLC, and James Mitchell III. In addition to alleging that these defendants aided and abetted Rousseau's financial misconduct, Perricone also asserted claims of misappropriation of funds and violation of CUTPA against them.

[6] In affirming the trial court's release and indemnification order in the dissolution decision, this court held that "[a]nything [Perricone] could recover from third parties was hers; nothing was to come from [Rousseau] and he was to be made whole for any future litigation costs regarding the civil action. In light of the court's determination that there had been no financial manipulation, which finding is not clearly erroneous, the order regarding the civil [action] was well within the court's discretion and served to maintain the status quo of the overall property mosaic." *Rousseau* v. *Perricone*, 148 Conn. App. 837, 850–51, 88 A.3d 559 (2014).

[7] See footnote 2 of this opinion.

[8] We do not offer an opinion in this decision as to whether the trial court erred in concluding that the dissolution action was not a prior pending action. Even if we were to assume, without deciding, that the dissolution action was a prior pending action, such an assumption would be immaterial in light of our conclusion that the applicability of the prior pending action doctrine would not compel a conclusion that the civil action necessarily was vexatious. Accordingly, we do not address these arguments.

[9] In its analysis of whether the prior pending action doctrine was applicable to the civil action, the trial court also concluded that Rousseau's status as a necessary party precluded application of the doctrine. All of the parties address this issue in their principal appellate briefs. In light of our conclusion that, even if the prior pending action doctrine were applicable, it would not compel a conclusion that the civil action necessarily was vexatious, we do not address these arguments.

[10] The plaintiffs rely on three cases from other jurisdictions for their proposition that a lack of probable cause in a vexatious litigation case may be predicated on the applicability of the prior pending action doctrine. See *SBK Catalogue Partnership* v. *Orion Pictures Corp.*, 723 F. Supp. 1053 (D.N.J. 1989); *Timeplan Loan & Investment Corp.* v. *Colbert*, 108 Ga. App. 753, 134 S.E.2d 476 (1963); *Neal* v. *Sparks*, 773 S.W.2d 481 (Mo. App. 1989).

We do not find their reasoning persuasive and they are not binding on this court. See *State* v. *Hutton*, 188 Conn. App. 481, 505, 205 A.3d 637 (2019) (cases from other jurisdictions may be persuasive but are not binding).

[11] In their principal appellate briefs, the parties also invoke the prior pending action doctrine for their arguments concerning whether the defendants had probable cause to commence and to continue the civil action. In light of our conclusion in part I of this opinion that, even if the prior pending action doctrine were applicable, it would not compel a conclusion that the civil action was vexatious, we do not address these arguments on the merits.

[12] As previously observed, because the question of whether there is probable cause in a vexatious litigation case is a question of law, our scope of review is plenary. *Schaeppi* v. *Unifund CCR Partners*, supra, 161 Conn. App. 46. Our review of a trial court's decision to grant a motion for summary judgment also is plenary. *Amity Partners* v. *Woodbridge Associates*, *L.P.*, supra, 199 Conn. App. 7. The plaintiffs acknowledge this in their principal appellate brief. The plaintiffs, however, still argue that this court should reverse the trial court's decision because "[a]pplication of an improper legal standard is a 'fatal flaw . . .' that, unless harmless, requires a new trial." We do not agree. The cases that the plaintiffs cite in support of their contention that the application of an improper legal standard is reversible error are distinguishable procedurally. See, e.g., *McDermott* v. *State*, 316 Conn. 601, 612, 113 A.3d 419 (2015) (reversing trial court when court applied incorrect legal standard during trial to determine whether defendant had assumed greater duty of care than that which was legally required); *Deroy* v. *Estate of Baron*, 136 Conn. App. 123, 125, 43 A.3d 759 (2012) (reversing trial court and remanding for new trial when trial court applied higher legal standard than required by law to question of testamentary capacity during trial); *Stein* v. *Tong*, 117 Conn. App. 19, 25, 979 A.2d 494 (2009) (improper evidentiary finding during trial tainted ultimate determination). Moreover, even if we were to assume that the court applied an incorrect standard, any error that the trial court made is immaterial should this court conclude, following our de novo review, that the defendants were entitled to summary judgment. See *Brown* v. *Otake*, 164 Conn. App. 686, 700 n.9, 138 A.3d 951 (2016). Accordingly, the plaintiffs' argument is unpersuasive.

---